# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| ERIKA B., | Case No.  3:19-CV-00152-REP |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security[1], | **(Dkts.  2, 6 & 13)** |
| Defendant. | |

Pending is Petitioner Erika B.'s Petition for Review (Dkt. 2) and an accompanying Brief in Support of Petition to Review (Dkt. 13) appealing the Social Security Administration's final decision finding her not disabled and denying her claim for disability insurance benefits.  *See* Pet. for Rev. (Dkt. 2).  This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## ADMINISTRATIVE PROCEEDINGS

Petitioner is a middle-aged woman with a history of obesity, depression, fibromyalgia, and heart problems.  On May 3, 2016, after receiving a mitral valve replacement, Petitioner filed an application for social security disability income ("SSDI") alleging a disability onset date of January 29, 2016.  Pt.'s Br. at 2 (Dkt. 13).  The claim was denied initially and on reconsideration

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi will be substituted, therefore, as the respondent in this suit.  Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g).

**MEMORANDUM DECISION AND ORDER - 1**

and Petitioner requested a hearing in front of an Administrative Law Judge ("ALJ"). AR[2] 83. On February 14, 2018, the claim went to a hearing before Administrative Law Judge ("ALJ") Jesse Shumway. *Id.* At the hearing, the ALJ received testimony from Petitioner and from a medical expert named Lynne Jahnke, M.D. *Id.* On March 27, 2018, the ALJ issued a decision that was unfavorable to Petitioner. AR 80-96.

Petitioner appealed this decision to the Appeals Council. As part of this appeal, Petitioner submitted numerous additional medical records to the Appeals Council, including hospital records for treatment that Petitioner received after the ALJ's decision was issued. AR 2. The Appeals Council declined to exhibit this evidence. *Id.* The Council subsequently denied Petitioner's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security. AR 1-4.

Having exhausted her administrative remedies, Petitioner filed this case. Petitioner raises three points of error. First, Petitioner argues that the ALJ did not provide legitimate reasons for giving less than controlling weight to the opinions of Dr. Emily Todd, Petitioner's treating physician. Pt.'s Br. at 8-9 (Dkt. 13). Second, Petitioner maintains that the ALJ failed to provide sufficient justification for discrediting Petitioner's symptom testimony. *Id.* at 14. Finally, Petitioner contends that the ALJ erred in rejecting the lay witness statements. *Id.* at 15.

## STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the

---

[2] Citations to "AR __" refer to the cited page of the Administrative Record (Dkt. 12).

**MEMORANDUM DECISION AND ORDER - 2**

ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The standard requires more than a scintilla but less than a preponderance.  *Trevizo*, 871 F.3d at 674.  It "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the conclusions of the ALJ.  *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051.  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Treichler*, 775 F.3d at 1098.  Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig*, 681 F.3d at 1051.  In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098.  Considerable weight is given to the ALJ's construction of the Social Security Act.  *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009).  However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

**MEMORANDUM DECISION AND ORDER - 3**

## THE SEQUENTIAL PROCESS

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA is work activity that is both substantial and gainful.  20 C.F.R. §§ 404.1572, 416.972.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant is engaged in SGA, disability benefits are denied regardless of his or her medical condition, age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that Petitioner did not engage in substantial gainful activity since January 29, 2016, the alleged onset of her disability.  AR 86.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities.

**MEMORANDUM DECISION AND ORDER - 4**

20 C.F.R. §§ 404.1522, 416.922.  If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the ALJ found that Petitioner had the following severe impairments: obesity, fibromyalgia, and depression.  AR 86.  The ALJ also discussed Petitioner's history of other conditions, including mitral valve replacement surgery, sleep apnea, hypertension, and peripheral edema.  *Id.*  The ALJ found that these conditions did not have "more than a minimal effect on the claimant's ability to perform basic work activities."  *Id.* Notably, the ALJ did not address Petitioner's history of post-surgery diastolic heart dysfunction and her corresponding diagnosis of congestive heart failure with preserved ejection fraction.  *Id.* Relying on the testimony of Dr. Jahnke, the ALJ found that Petitioner's "heart function has been quite good."  *Id.*

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal a listed impairment, the claim cannot be resolved at step three and the evaluation proceeds to step four.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the ALJ found that Petitioner did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  AR 86.

In the fourth step of the evaluation process, the ALJ decides whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is her ability to do

**MEMORANDUM DECISION AND ORDER - 5**

physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work she performed within the last 15 years or 15 years prior to the date that disability must be established, if the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ found that Petitioner would be capable of performing sedentary work, with certain additional limitations, including that she could not kneel, crawl, or climb ladders, ropes or scaffolds and could not be exposed to hazards. The ALJ also concluded that Petitioner would be limited to simple, routine tasks, in a predictable work environment with no more than occasional, simple changes. AR 89.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th Cir. 2014). If the claimant can do such other work, he is not disabled; if the claimant cannot do other work and meets the duration requirement, he is disabled. Here, the ALJ found that as of the date of the decision, Petitioner was not capable of performing her past relevant work, but that she was currently capable of working full time as an escort vehicle driver, a final assembler, or a printed circuit layout taper. AR 95. Based on these findings, the ALJ concluded that Petitioner was not disabled. *Id.*

**MEMORANDUM DECISION AND ORDER - 6**

## DISCUSSION

I.   The Medical Opinion Evidence

Petitioner's first challenge on appeal is to the ALJ's treatment of the opinions of her primary care physician, Dr. Emily Todd. Petitioner began seeing Dr. Todd in April of 2017 after Petitioner's previous provider, a physician assistant, moved offices. AR 1851-1852, 2055. Over the course of the treatment relationship, Petitioner visited Dr. Todd on numerous occasions complaining of pain, fatigue, shortness of breath, and edema (swelling caused by excess fluids). AR 1871-1872, 1877-1878, 1882, 1884-1885, 2082-2083, 219-221, 222-223, 233-244.

On January 15, 2018, Dr. Todd completed a questionnaire, at the request of Petitioner's attorney, regarding the nature of Petitioner's medical conditions and the impact these conditions have on Petitioner's functioning. AR 2054-2056. In this questionnaire, Dr. Todd acknowledged that Petitioner had one of her heart valves replaced in May of 2016. AR 2056. Dr. Todd indicated that Petitioner had recovered from this surgery, that the valve was "stable and working," and that Petitioner did not suffer any impairment because of the valve replacement. *Id.* Dr. Todd noted, however, that Petitioner suffers from another, ongoing heart condition: congestive heart failure ("CHF"). *Id.* Dr. Todd opined that Petitioner's CHF in combination with her obesity moderately impairs Petitioner's ability to work. *Id.* Dr. Todd also concluded that Petitioner's depression posed a moderate impairment. *Id.*

As to the mechanism of the impairment, Dr. Todd explained that (i) Petitioner's obesity and CHF jointly cause Petitioner to experience shortness of breath and peripheral edema, (ii) Petitioner's obesity (but not her CHF) causes Petitioner joint pain, (iii) as a result of the joint pain and swelling, Petitioner has issues with fine manipulation, and (iv) as a result of her combined conditions, Petitioner has several postural, exertional, and environmental limitations,

**MEMORANDUM DECISION AND ORDER - 7**

including an inability to walk for more than four hours during a normal workday. AR 2056-2061. Despite these limitations, Dr. Todd did not conclude that Petitioner was incapable of performing any work. AR 2060. Dr. Todd reported that Petitioner retained the ability to occasionally complete tasks requiring gross and fine manipulation, potentially up to 1/3 of the workday. AR 2058. Dr. Todd also found that Petitioner could engage in light or sedentary work for six hours a day. AR 2061. Finally, Dr. Todd specified that Petitioner's issues with fine manipulation "should get better/resolve if she loses weight, [and] takes water pills." AR 2059.

The ALJ declined to give controlling weight to these opinions. AR 93. The ALJ instead credited the opinions of the reviewing medical expert, Dr. Jahnke. AR 92-93. Because this case arose prior to March 27, 2017, the older rules guiding an ALJ's evaluation of treating source opinions apply to the Court's review of the ALJ's decision. 20 C.F.R. §§ 404.1527 and 416.927.

These rules distinguish among medical opinions based on whether the physician providing the opinion: (i) treated the claimant (a treating physician), (ii) examined but did not treat the claimant (an examining physician), or (iii) neither examined nor treated the claimant (a non-examining or reviewing physician). *Garrison*, 759 F.3d at 1012. In general, the opinions of treating physicians are given more weight than the opinions of examining physicians, and the opinions of examining physicians are afforded more weight than the opinions of reviewing physicians. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). Where, as here, the opinions of a treating physician conflict with the opinions of a reviewing physician, the ALJ may not reject opinions of treating physician in favor of the reviewing physician unless the ALJ first provides "specific [and] legitimate reasons" that are "based on substantial evidence in the record." *Andrews v. Shalala*, 53 F.3d 1035, 1041-42 (9th Cir. 1995). The opinions of the

reviewing physician do not constitute such substantial evidence standing alone.  *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995).

Here, the ALJ provided four logically distinct reasons for giving less than full weight to the opinions of Dr. Todd.  First, the ALJ asserted that Dr. Todd's opinion as a whole was "not entirely consistent" with her own treatment notes.  AR 93.  Second, the ALJ concluded that Dr. Todd's opinions were also not consistent with the "longitudinal" medical record, which "generally" showed examinations "within acceptable limits."  *Id.*  Third, the ALJ questioned Dr. Todd's opinions about Petitioner's manipulative limitations on the basis that "there are very few complaints or physical findings related to the claimant's hands in the record, and there are no medically determinable impairments that would reasonably explain any difficulty with hand functioning."  *Id.*  Finally, the ALJ believed that Dr. Todd's assessed impairments were inconsistent with Petitioner's activities of daily living.  *Id.*

The parties disagree about whether these alleged inconsistencies are supported by substantial evidence.  Having carefully reviewed the record, the Court agrees with Petitioner that the evidence cited by the ALJ does not rationally undermine Dr. Todd's measured opinions.

> A.  Evidence of Petitioner's post-decision decline is not part of the record on review.

Before conducting the substantial-evidence review, the Court must first determine what body of evidence to include in its review.  Petitioner argues that the Court should assess the ALJ's decision in light of additional medical evidence that was not available to the ALJ and that was later submitted to, but not exhibited by the Appeals Council.  Pt.'s Br. at 6-7 (Dkt. 13).

The additional evidence consists of numerous hospital and medical records showing further decline in Petitioner's heart health after the February 14, 2018 hearing.  *Id.* at 3, 6-7; *see also* AR 2.  Most notably, after the ALJ issued the decision finding Petitioner was not disabled,

**MEMORANDUM DECISION AND ORDER - 9**

Petitioner was twice admitted to the hospital to undergo diuresis.  The first of these admissions occurred between June 27, 2018 and June 30, 2018.  AR 314.  During this visit, Petitioner presented at the hospital with "increasing shortness of breath," swelling, and left-sided chest pain.  *Id.*  Doctors at the hospital noted that Petitioner had a history of the following prior conditions: diastolic heart failure, obstructive sleep apnea ("OSA"), and obesity.  *Id.*  Doctors admitted Petitioner to the hospital for two nights and, during this period, removed approximately 7 liters of excess fluid from Petitioner's body.  *Id.*  Doctors also ordered an echocardiogram, which showed that Petitioner's repaired mitral valve was functioning normally, but that her left ventricle had Grade II diastolic dysfunction.  AR 315, 350.  Doctors diagnosed Petitioner with heart failure with preserved ejection fraction ("HFpEF").  AR 314.  Doctors discharged Petitioner with instructions to take an increased dose of her oral diuretic for the time being.  AR 315.

Less than a month later, on July 15, 2018, Petitioner returned to the hospital with hypoxia and was again admitted for "chronic congestive heart failure."  AR 275.  During this admission, doctors removed approximately 3 liters of excess fluid from Petitioner's body.  *Id.*  Records from this visit confirm that Petitioner suffers "super morbid obesity" and chronic congestive heart failure with preserved ejection fraction ("HFpEF").  AR 274.

Petitioner maintains that the Court may consider this obvious evidence of heart failure because it was submitted to the Appeals Council.  Pt.'s Br. at 7 (Dkt. 13) (citing *Brewes v. Comm'r of SSA*, 682 F.3d 1157, 1162 (9th Cir. 2012)).  The Court disagrees.[3]

---

[3] Oddly, Respondent makes no reference to the additional evidence in its briefing and takes no position on whether the Court may consider it.  *See generally* Res.'s Br. (Dkt. 14).

**MEMORANDUM DECISION AND ORDER - 10**

In *Brewes*, the Ninth Circuit held that the administrative record on appeal "includes evidence submitted to and *considered* by the Appeals Council."  *Brewes*, 682 F.3d at 1162 (emphasis added).  Here, the Appeals Council expressly declined to consider or exhibit any of the evidence submitted after the ALJ's decision.  AR 2.  The evidence did not, therefore, become part of the administrative record for the purposes of review.  *Warzecha v. Berryhill*, 692 F. App'x 859, 860 (9th Cir. 2017) (unpublished) ("The new evidence that Warzecha submitted to the Appeals Council did not become part of the administrative record when the Appeals Council returned the evidence without considering it."); *Bales v. Berryhill*, 688 F. App'x. 495, 496 (9th Cir. 2017) (unpublished) (where the Appeals Council found that the new medical records did not "relate to the period on or before the date of the administrative law judge hearing decision," and did not, therefore consider these records, the records did not become part of the administrative record).

To the extent Petitioner disagrees with the *reasons* the Appeals Council provided for refusing to exhibit the newly submitted evidence, the appropriate method for Petitioner to challenge this decision was a request for a remand for the ALJ to consider the new evidence.  *See Taylor v. Comm'r of SSA*, 659 F.3d 1228, 1233 (9th Cir. 2011) ("Where the Appeals Council was required to consider additional evidence, but failed to do so, remand to the ALJ is appropriate so that the ALJ can reconsider its decision in light of the additional evidence."); *see also* 42 U.S.C. § 405(g) (permitting a court to remand a case "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding").  Petitioner, however, has not requested such relief.  Nor is it clear that such a challenge would be successful.  As amended in 2017, Section 404.970(b) provides that the Appeals Council will only "consider" additional evidence submitted

after the ALJ's decision if (i) such evidence is new, material, relates to the period on or before

the hearing decision, and provides a reasonable probability that the outcome of the hearing

decision would change and (ii) a claimant shows good cause for not timely submitting the

evidence before the hearing with the ALJ.  20 C.F.R. § 404.970(b); *see also* AR 2.  While the

Court sees good reason to question the Appeals Council's determination that hospital records

documenting the further deterioration of Petitioner's longstanding heart impairments do not

relate to Petitioner's condition during the relevant time period, Petitioner has made no attempt to

meet her burden of demonstrating good cause for the late submission of this evidence.  In the

absence of such a showing, the Court lacks the authority to remand under 42 U.S.C. § 405(g) for

the consideration of new evidence.  *See Bales*, 688 F. App'x. at 496.  The Court will proceed,

therefore, to consider the ALJ's decision based solely on the evidence presented to the ALJ.

      B.  <u>The ALJ's conclusory assertion that Dr. Todd's treatment notes are not</u>
<u>entirely consistent with Dr. Todd's questionnaire was not a specific or</u>
<u>legitimate reason to reject Dr. Todd's opinions.</u>

One of the first reasons the ALJ articulated for rejecting Dr. Todd's opinions is an alleged

inconsistency between these opinions and Dr. Todd's own treatment notes.  AR 93. Respondent

is correct that inconsistencies within a treating physician's file can be a specific and legitimate

reason for an ALJ to discredit the opinions of a treating physician.  *Ford v. Saul*, 950 F.3d 1141,

1154 (9th Cir. 2020).  Where such inconsistencies form the basis for rejecting a treating

physician's opinions, however, it is incumbent on the ALJ to identify the alleged discrepancies

with sufficient specificity to permit meaningful judicial review.  *See Trevizo v. Berryhill*, 871

F.3d 664, 676-677 (9th Cir. 2017) (rejecting the "ALJ's conclusory determination that [a

doctor's] opinion was contradicted by his treatment notes" as insufficiently detailed, where the

ALJ "pointed to nothing in [the doctor's] treatment notes or elsewhere in the clinical record that

**MEMORANDUM DECISION AND ORDER - 12**

contradicted the treating physician's opinion"); *see also Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir. 2009) (admonishing that courts must "review the ALJ's decision based on the reasoning and factual findings offered by the ALJ -- not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking").

The ALJ's opinion fails to satisfy this standard.  Other than one example related to Petitioner's hands – which is addressed in detail below – the ALJ does not explain how or why Dr. Todd's treatment notes conflict with Dr. Todd's completion of Petitioner's questionnaire. AR 93.

This is troubling because the ALJ's rejection of Dr. Todd's opinions extends far beyond a dispute over Petitioner's hand functioning.  Critically, the ALJ refused to believe that Petitioner suffers from congestive heart failure or that this heart failure, in combination with Petitioner's obesity, causes her shortness of breath.  *See*, *e.g.*, ALJ Decision, AR 86, 92-93 (concluding that Petitioner's "heart functioning has been quite good" and giving "great weight" to Dr. Jahnke's opinion that "nothing in the record" can explain Petitioner's "alleged shortness of breath symptoms").  These determinations led the ALJ to reject Dr. Todd's findings that, as of January 2018, Petitioner experienced various physical and exertional limitations, including an inability to work for more than six hours a day.

Dr. Todd's treatment records do not justify this conclusion.  Dr. Todd's treatment records include numerous indicia that Petitioner experiences edema and shortness of breath associated with heart failure and obesity.  For example, Dr. Todd regularly observed edema of Petitioner's extremities and prescribed Petitioner a diuretic to treat this swelling.  *See*, *e.g.*, AR 1871-1872 (ongoing leg swelling and tachycardia); AR 1877-1878 (observing that Petitioner has +1 pitting edema in her lower extremities and directing that Petitioner continue taking a diuretic for water

**MEMORANDUM DECISION AND ORDER - 13**

retention and swelling); AR 1881-1882 (Petitioner had +1 pitting edema in her feet and pretibial areas); AR 1884-1885 (same). Dr. Todd's records also show that Petitioner consistently complained of debilitating shortness of breath. *See*, *e.g.*, AR 1871-1872 (reporting increased fatigue and shortness of breath); AR 1877-1878 (noting that Petitioner "feels like she cannot take care of herself" because of shortness of breath); AR 1881-1882 (calling Petitioner's shortness of breath "debilitating"); AR 1884-1885 (documenting Petitioner's chronic shortness of breath). By January 2018, when Dr. Todd completed the relevant questionnaire, these conditions had only worsened. On January 12, 2018, Dr. Todd saw Petitioner for a follow-up visit related to the "exacerbation" of Petitioner's chronic heart failure and worsening shortness of breath. AR 2082. Dr. Todd observed +1 pitting edema, with mild swelling in Petitioner's hands and face, which was an improvement from Petitioner's last visit with another doctor in Dr. Todd's practice group. *Id.* Dr. Todd also diagnosed Petitioner with chronic congestive heart failure and continued Petitioner on an increased dose of her diuretic, which had helped Petitioner lose 12 pounds of water weight in two days. AR 2082-2083. The Court fails to see and the ALJ never explained how these records undermined Dr. Todd's opinions about Petitioner's heart failure, obesity, and their combined impact on her ability to work.

In an attempt to fill in this gap, Respondent identifies several putative conflicts between Dr. Todd's treatment records and the challenged questionnaire. Res.'s Br. at 11-12 (Dkt. 14). Post hoc explanations, such as these, cannot salvage an ALJ's conclusory opinions. *See Bray*, 554 F.3d at 1225. Even if they could, the Court agrees with Petitioner that the evidence Respondent identifies as conflicting with Dr. Todd's opinions "is not responsive to" Dr. Todd's actual opinions. To begin, Respondent argues that Dr. Todd's examinations finding Petitioner has a normal gait contradict Dr. Todd's opinion that Petitioner can only walk five minutes at a

**MEMORANDUM DECISION AND ORDER - 14**

time.  Res.'s Br. at 11 (Dkt. 14).  Respondent misstates Dr. Todd's opinions.  Dr. Todd found

that Petitioner could stand and walk (with normal breaks) for four out of eight hours in a

workday.  AR 2056-2057.  Dr. Todd also found that Petitioner would need to alternate sitting,

standing, or walking to relieve discomfort, and therefore "must" walk around for five minutes

once every two hours.  AR 2056-2057.  There is no rational conflict between these opinions and

a finding that Petitioner walks with a normal gait during a physical in her doctor's office.  Next,

Respondent maintains that Dr. Todd's recommendation that Petitioner avoid exposure to fumes,

odors, dusts, and poor ventilation is inconsistent with physical examinations showing that

Petitioner's lungs were clear to auscultation.  Res.'s Br. at 11-12 (Dkt. 14).  This argument

ignores the fact that Petitioner's difficulty breathing is caused by obesity and heart failure, not by

a lung condition.  Finally, Respondent's argument about Petitioner's lack of a documented

shoulder abnormality suffers from the same flaw as the argument about Petitioner's lungs.  Dr.

Todd found that Petitioner's impairments were caused by shortness of breath, swelling, and joint

pain related to obesity, not structural issues with Petitioner's shoulder.

Substantial evidence does not support a finding of inconsistencies between Dr. Todd's

examinations and her opinions about Petitioner's heart failure and shortness of breath.  The ALJ

erred in rejecting Dr. Todd's opinions on these grounds.

        C.  The longitudinal record supported, rather than contradicted, Dr. Todd's
            conclusion that Petitioner has heart failure and obesity with attendant
            shortness of breath.

The second, and closely related, reason the ALJ provided for rejecting Dr. Todd's

opinions was an alleged conflict between these opinions and the "longitudinal" record.  AR 93.

Once again, aside from one narrow example pertaining to Petitioner's hand functioning – which

**MEMORANDUM DECISION AND ORDER - 15**

is addressed below – the ALJ did not provide any explanation of how Dr. Todd's opinions

diverged from the treatment records of other providers.

Setting aside the ALJ's discussion of Petitioner's hand mobility, the entirety of the ALJ's

comparison of Dr. Todd's opinions to the "longitudinal" record reads as follows:

> Dr. Todd's opinion is not entirely consistent with the longitudinal medical record . . .
> [T]he record demonstrates that despite the claimant's severe physical impairments, her
> examinations have nevertheless generally been within acceptable limits (e.g., 2F/59-60;
> 7F/4-6; 8F/23-24, 44, 97; 10F/6-7, 46-47; 12F/3; 15F/10-11, 29; 18F/7; 19F/5-6, 25-26,
> 31-32, 38-39; 20F/35; 21F; 28F/11, 14-15).

AR 93.  The only other light the ALJ's decision shines on what the ALJ meant by "acceptable

limits" or what specific examinations the ALJ believed to have undermined Dr. Todd's opinions

is a four paragraph narrative summary of the cited medical records, which is included in different

section of the ALJ's opinion.  AR 90-91.

Having carefully considered this summary as well as the relevant records, the Court

struggles to see how a reasonable person could conclude that the "longitudinal" records

contravene Dr. Todd's opinions.  According to both the medical records and Dr. Todd's

questionnaire, Petitioner underwent surgery in the spring of 2016 to replace her mitral valve.  AR

1561, 2056.  After this surgery, Petitioner's condition initially improved.  AR 1557-1558 (May

31, 2016: fatigue improving post-surgery); AR 1537 (August 23, 2016: same).  Petitioner's

reports of fatigue and shortness of breath, however, never entirely dissipated.  AR 1531

(September 9, 2016: assessing Petitioner with shortness of breath); AR 1772, (November 9,

2016: reporting fatigue); AR 1799, 1802 (February 2017: Petitioner still struggling to restore her

health post-surgery and continuing to take "rest" periods during the day); AR 1806 (March 2017:

Petitioner continuing to suffer from decreased mobility and stamina after completing cardiac

rehab); *see also* AR 1527, 1532, 1546.  By the summer of 2017, Petitioner was showing

**MEMORANDUM DECISION AND ORDER - 16**

increased signs of cardiac problems, including shortness of breath, fatigue, and edema.  *See*, *e.g.*, AR 1871-1872 (fatigue); AR 1817, 1835, 1871-1872, 1881-1882, 1884-1885 (shortness of breath); AR 1835, 1877-1878, 1881-1882, 1884-1885 (edema); AR 1796, 1871-1872 (tachycardia).  Dr. Todd increased Petitioner's daily dose of torsemide, a diuretic, to help control the swelling in Petitioner's legs.  AR 1866.

On August 18, 2017, Petitioner underwent an echocardiogram to assess her heart functioning.  AR 1825-1827.  As Dr. Todd's questionnaire correctly notes, this echocardiogram showed that Petitioner's prosthetic mitral valve was functioning normally.  AR 1825.  The test indicated, however, that Petitioner's "left ventricular diastolic function [was] consistent with Grade I diastolic dysfunction."  *Id.*

Based on this test and on Petitioner's worsening symptoms, one of Petitioner's treating providers, Dr. Deborah Collins, subsequently diagnosed Petitioner with heart failure with preserved ejection fraction ("HFpEF").  AR 2080.  Dr. Todd agreed with this diagnosis.  AR 2082-2083.  Dr. Todd and other medical providers who saw Petitioner during this period reported symptoms consistent with this diagnosis.  *See* AR 1988, 2037, 2039, 2080-2082 (documenting shortness of breath and edema).  In short, Petitioner's deteriorating heart failure was well-documented in the record when Dr. Todd filled out the January 2018 questionnaire.

By this time, Petitioner's obesity was also well-verified.  As of January 2018, Petitioner weighed over 300 pounds, with a BMI over 50.  AR 2080-2083.  The Social Security Administration's own rulings recognize that obesity of this level may "affect [a] person's physical and mental ability to sustain work activity," especially where the person, like Petitioner, suffers from sleep apnea.  Social Security Ruling ("SSR") 19-2p, 2019 WL 2374244, at *4 (May 20, 2019).  The Administration further acknowledges that "[t]he combined effects of obesity

**MEMORANDUM DECISION AND ORDER - 17**

with another impairment," such as Petitioner's heart failure, "may be greater than the effects of each of the impairments considered separately." *Id.* Consistent with these rulings, Dr. Todd's questionnaire reasonably considers the combined impact of Petitioner's obesity and heart failure on her ability to function.

The records emphasized by the ALJ and Respondent are, by and large, irrelevant to these conditions or to Dr. Todd's contested opinions about these conditions. For example, the ALJ highlights, among other findings, that Petitioner has "intact cranial nerves," normal ears, a normal neck, intact cognition, a normal back, normal gait, the ability to hear, and good eye contact. AR 90-91. None of these findings undercut Dr. Todd's opinion that Petitioner suffered from congestive heart failure and obesity with shortness of breath.

In the entirety of its briefing, Respondent identifies only one record that pertains to any of the conditions discussed in Dr. Todd's questionnaire: a November 1, 2016 emergency room record stating Petitioner did not have any joint pain, back pain, or muscle aches at the time of treatment. Res.'s Br. at 12 (Dkt. 14) (citing AR 1624). This record relates to emergency treatment Petitioner sought for abdominal pain in the fall of 2016, over fourteen months before Dr. Todd assessed Petitioner's physical functioning. AR 1623-1624. Critically, although the ALJ discussed the November 1, 2016 record, the ALJ never mentioned the part of the record noting an absence of joint pain. AR 90, 93. Nor did the ALJ issue any findings that Petitioner's lack of joint pain on one day in November 2016 conflicted with the opinions Dr. Todd issued over fourteen months later, when Petitioner weighed significantly more. This record cannot, therefore, form a basis for affirming the ALJ's decision. *See Bray*, 554 F.3d at 1225 (a court may not affirm an ALJ's reasoning based on post hoc rationalizations). The ALJ's two sentence

**MEMORANDUM DECISION AND ORDER - 18**

analysis of the longitudinal record did not identify specific and legitimate reasons, supported by

substantial evidence, for the ALJ's sweeping rejection of Dr. Todd's diagnoses and opinions.

> D.   <u>The medical record contains ample evidence that Petitioner suffers from
> peripheral edema and obesity, both conditions that could cause manipulative
> limitations.</u>

The only specific conflict the ALJ identified between the medical record and Dr. Todd's

questionnaire involved Petitioner's hand functioning.  Dr. Todd opined that Petitioner had

"issues" with fine manipulation due to joint pain and swelling in her hands.  AR 2059.  The ALJ

discounted this opinion on the basis that "there are very few complaints or physical findings

related to the claimant's hands in the record, and there are no medically determinable

impairments that would reasonably explain any difficulty with hand functioning."  AR 93.

The ALJ's reasoning does not hold water.  While it is true that Petitioner's hand

functioning is not the focus of her medical records, the ALJ's assertion that Petitioner does not

suffer any "medically determinable" impairment that could cause manipulative difficulties is

demonstrably false.  There is ample evidence in the record that Petitioner is morbidly obese, and

that Petitioner regularly experiences peripheral edema.  AR 1835, 1877-1878, 1881-1882, 1884-

1885, 2080-2083.  Dr. Todd specifically explained that these conditions result in the swelling of

Petitioner's hands and fingers, thereby limiting Petitioner's ability to manipulate items.  AR

2056, 2059.  The Social Security Administration's own rulings acknowledge that obesity is a

medically determinable impairment that can "affect a person's ability to manipulate objects."

SSR 19-2p, 2019 WL 2374244, at *4.  The ALJ erred in concluding that Petitioner did not have

any conditions that could "reasonably" explain the moderate, and potentially treatable,

limitations in Petitioner's ability to manipulate objects that Dr. Todd assessed.

**MEMORANDUM DECISION AND ORDER - 19**

E.   Petitioner's activities of daily living are not inconsistent with moderate impairments and an ability to work six hours a day.

The final justification the ALJ provided for rejecting Dr. Todd's opinions was Petitioner's ability to perform many activities of daily living.  AR 93.  Specifically, the ALJ believed Dr. Todd's opinions were inconsistent with Petitioner's ability to care for herself, drive a car, shop in stores, attend doctor's appointments, watch television, care for her cats, wash laundry, pay bills, read, color, talk on the phone with friends, cook, take one camping trip with a friend, and walk outside.  AR 92.  The Court agrees with Petitioner that this finding was not supported by substantial evidence and was not a rational interpretation of the evidence.

Not all activities of daily living are inconsistent with impairment.  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("many home activities are not easily transferable to what may be the more grueling environment of the workplace"); *see also Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) ("impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day").

Here, Dr. Todd opined that Petitioner retained the capability to (i) occasionally lift 20 pounds, (ii) frequently lift 10 pounds, (iii) walk for four hours a day with normal breaks, and (iv) occasionally reach overhead, manipulate objects, kneel, and climb stairs.  AR 2056-2059.  Furthermore, Dr. Todd believed Petitioner could perform either light or sedentary work for six hours a day.  AR 2060-2061.  Petitioner's reported activities are not in tension with these limitations.  Caring for pets, cooking, doing laundry, and taking care of oneself are not activities that typically require more than six hours of sustained effort per day.  Furthermore, these activities can be completed sporadically, punctuated with rest breaks as needed.  *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily

**MEMORANDUM DECISION AND ORDER - 20**

living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer.").

Indeed, Petitioner reported that she only does laundry and cleans her cat's litterbox once a week, only feeds her cats every three days, and only makes microwave meals and sandwiches to eat. AR 727. Petitioner specifically noted that she does not do yardwork because she gets "tired" and "it gets hard to breath." AR 727-728. Finally, all of Petitioner's regular hobbies are sedentary: reading, watching television, coloring, and talking on the phone. AR 729. Nothing about these activities suggests that Dr. Todd was wrong to conclude Petitioner could only engage in sustained work for six hours a day. The ALJ erred in finding that Petitioner's activities justified rejecting the opinions of her treating physician.

II.   The Remedy

When an ALJ's denial of benefits is not supported by the record, district courts possess discretion under 42 U.S.C. § 405(g) to remand for further proceedings or for an award of benefits. *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1099 (9th Cir. 2014). The proper course turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings and when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100. In most cases, however, remand for additional investigation or explanation is preferred. *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012). Such remands allow for the ALJ to resolve any outstanding issues in the first instance.

In this case, it remains uncertain whether the ALJ would be required to award Petitioner full benefits if the errors in the ALJ's treatment of Dr. Todd's opinions are corrected. Dr. Todd

**MEMORANDUM DECISION AND ORDER - 21**

opined that Petitioner could work 30 hours a week.  AR 2061.  This opinion reflected Petitioner's abilities as of January 2018, after her heart condition had declined.  AR 2016; Pt.'s Br. at 3, 7 (Dkt. 13).  Among other things, legitimate questions remain regarding Petitioner's ability to work earlier in the period of alleged disability.  The Court will, therefore, reverse and remand for further proceedings under the ordinary remand rule.  On remand, the ALJ is directed to reevaluate the medical record consistent with this disposition.[4]

## ORDER

Based on the foregoing, Petitioner's Petition for Review and the Brief in Support of Petition to Review (Dkts. 2 & 13) are **GRANTED,** and the decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings consistent with this decision.

DATED: July 27, 2021

Raymond E. Patricco
U.S. Magistrate Judge

---

[4] Because the ALJ has the discretion to enter new findings regarding Petitioner's credibility and the lay witness evidence on remand, the Court does not address Petitioner's challenge to these portions of the ALJ's decision.

**MEMORANDUM DECISION AND ORDER - 22**